**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOSE CHARACTERS FROM CLEVELAND, LLC, | |
| Plaintiff, | Civil Action No. 26-cv-2443 |
| v. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

### AMENDED COMPLAINT

Those Characters From Cleveland, LLC ("Plaintiff" or "TCFC"), by and through its undersigned counsel, hereby files this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and alleges as follows based on Plaintiff's investigation, including the marketplace listings and screenshots attached as Exhibit 3:

**I.    Jurisdiction And Venue**

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Copyright Act, 17 U.S.C. § 101, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores

1

operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.      This Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), which permits service under New York's long-arm statute, C.P.L.R. § 302(a)(1) and § 302(a)(3)(i) and (ii), or alternatively pursuant to Fed. R. Civ. P. 4(k)(2), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District, derive substantial revenue from business transactions in New York and in this Judicial District, and otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants is consistent with due process and does not offend traditional notions of fair play and substantial justice.

4.      In addition, Defendants' illegal counterfeiting and infringement actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this judicial District.

5.      For example, Defendants' Seller Aliases accept orders of counterfeit products from and offer to ship to New York addresses located in this Judicial District.

6.      Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York and in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as PayPal and Shop Pay, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more

2

particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, communicate with Defendants regarding their listings for counterfeit products, and place orders for, receive invoices for and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

## II.    **<u>Parties</u>**

7.    Plaintiff Those Characters From Cleveland, LLC is a limited liability company with a principal place of business at 1468 W. 9th Street, Suite 700, Cleveland, Ohio 44113, USA.

8.    Plaintiff is the owner of all right, title, and interest in and to the intellectual property rights associated with the Care Bears franchise, including characters such as Tenderheart Bear, Cheer Bear, Grumpy Bear, Funshine Bear, and others (collectively, the "CARE BEARS Characters"). The Care Bears were first introduced in the early 1980s and have become globally recognized symbols of friendship, caring, and positivity. The CARE BEARS Characters are also highly distinctive visual characters with protectable original expression, including their character designs, facial features, color palettes, costume and body elements, and signature belly badges and associated artwork.



## Check out all the Unlock the Magic Care Bears!







Cheer Bear

Funshine Bear

Good Luck Bear







Grumpy Bear

Share Bear

Tenderheart Bear





Wish Bear          Bedtime Bear          Harmony Bear





Love-a-lot Bear          Always There Bear          Smart Heart Bear





Champ Bear          Friend Bear          Take Care Bear



True Heart Bear        Thanks-a-lot Bear        Hopeful Heart Bear

Secret Bear        Heartsong Bear        Superstar Bear

Daydream Bear        Work of Heart Bear        Sweet Dreams Bear





https://www.carebears.com/kids/

9.      This action has been filed to combat online trademark and copyright infringement by sellers who trade upon Plaintiff's reputation, goodwill, and valuable intellectual property by selling and/or offering for sale unauthorized products that use, reproduce, copy, derive from, or are confusingly similar to Plaintiff's CARE BEARS Marks and/or CARE BEARS Works in violation of Plaintiff's rights.

10.     Those Characters From Cleveland, LLC is the current owner of several copyright registrations including, but not limited to, the following Copyright Registration Nos. asserted in this action VA 1982408, VA 1824810; VAu 1387240; VAu 1391157; VAu 1391161; VAu 1392908; VAu 1394623; VAu 1395793; VAu 1436621; VAu 1493306; VAu 1493374; VAu 1521584; and VAu 1531762 (collectively the "CARE BEARS Works").

11.     True and correct copies of the registration certificates for the CARE BEARS Works are attached as Exhibit 1.

12.     In addition, Those Characters From Cleveland, LLC is the owner of numerous United States trademark registrations for CARE BEARS and related character names, logos, and designs (the "CARE BEARS Marks"), including but not limited to U.S. Trademark Registration Nos. asserted in this action: 3,336,078; 1,270,509; 1,294,343; 6,748,823; 3,767,824; (collectively, the "CARE BEARS Marks").

13.     The CARE BEARS Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the CARE BEARS Marks pursuant to 15 U.S.C. § 1057(b).

14.     True and correct copies of the registration certificates for the CARE BEARS Marks asserted in this action are attached as Exhibit 2.

15.     The CARE BEARS Marks and CARE BEARS Works have been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the CARE BEARS Marks and CARE BEARS Works in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation

— substantial print media, the CARE BEARS website and social media sites, and point of sale materials.

16.    The CARE BEARS Marks and CARE BEARS Works have been continuously used and have never been abandoned. The CARE BEARS trademark and copyright registrations are valid, subsisting, and in full force and effect. The registrations of the CARE BEARS Marks constitute prima facie evidence of their validity pursuant to 15 U.S.C. §1057(b).

17.    Plaintiff has invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the CARE BEARS Marks and CARE BEARS Works. As a result, products associated with the CARE BEARS Marks and CARE BEARS Works are recognized and exclusively associated by consumers and the public as being products sourced from Plaintiff.

18.    Plaintiff has made efforts to protect its interests in and to the CARE BEARS Marks and CARE BEARS Works. No one other than Plaintiff and its licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the CARE BEARS Marks and/or CARE BEARS Works without the express written permission of Plaintiff.

19.    Upon information and belief, Defendants are individuals and business entities who reside in various foreign jurisdictions, including but not limited to China and other countries from which infringing goods are commonly exported to the United States. Defendants conduct business throughout the United States, including within New York and in this judicial district, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized products identified in Schedule A and reflected in Exhibit 3 that display Plaintiff's CARE BEARS Marks,

copy or derive from Plaintiff's CARE BEARS Works, or both, to consumers within the United States, including New York and in this Judicial District.

## III.    Factual Background

20.    Prior to the rise of anonymous online marketplaces, Plaintiff successfully enforced its intellectual property rights against identifiable infringers through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to obscure seller identity and quickly recreate listings, has made traditional enforcement actions challenging. Plaintiff has attempted to utilize takedown procedures to remove infringing CARE BEARS Products, but such efforts have proven inadequate and commercially unreasonable because new listings using Plaintiff's marks and copyrighted artwork appear as quickly as others are removed. Plaintiff's investigation has identified repeated marketplace listings offering unauthorized products that copy Plaintiff's protected character artwork, use the CARE BEARS name and related marks, or both, often at prices below those for authentic licensed products:

### PLAINTIFF'S OFFICIALLY LICENSED PRODUCT



https://www.carebears.com/

11



**Amazon.com: Care Bears St. Patrick's Day Good Luck Bear Rainbow Go Green Tank Top : Clothing, Shoes & Jewelry**



**Care Bears Women's Graphic Tee with Short Sleeves, Sizes XXS-XXL - Walmart.com**



**Care Bears Trio Corduroy Dad Cap | Hot Topic**

**COUNTERFEIT/INFRINGING LISTINGS**

[REMOVED FROM PUBLIC DOCKET]

21.    The above examples evidence repeated unauthorized use of Plaintiff's intellectual property across multiple seller storefronts and platforms, including listings that use the CARE BEARS name, character names, or artwork associated with the CARE BEARS Characters, as well as listings that display substantially similar copies or derivative versions of Plaintiff's protected works.

22.    In an effort to profit from Plaintiff's intellectual property, Defendants have created numerous Seller Aliases and used them to advertise and sell products using Plaintiff's CARE BEARS Marks and/or CARE BEARS Works, Defendants ' uses are commercial uses made in connection with the sale of goods and are not authorized by Plaintiff. On information and belief, Defendants are not using Plaintiff's protected material for commentary, criticism, news reporting, scholarship, research, or any other transformative fair-use purpose, but instead to attract consumers to purchase Defendants' products.

23.    Plaintiff has suffered and continues to suffer immediate and irreparable harm through loss of control over its valuable intellectual property, diminution of reputation and goodwill, loss of quality control, consumer confusion and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating injunctive relief and monetary damages.

24.    The systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiff and its ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit and infringing products.

25.     To be able to offer the infringing products at a price substantially below the cost of original, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a recent Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network[1].

26.     The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

27.     In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic[2].

28.     Plaintiff's investigation shows that the telltale signs of an online infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ no normal business nomenclature and, instead, have the appearance of being fictitious or randomly generated, or if a company name that appears to be legitimate is used, investigation reveals that there is no verifiable business address or legitimate business entity associated with such name. Thus, the Seller Aliases are deliberately operating deceptive online storefronts designed to mislead consumers by appearing to sell genuine or authorized CARE BEARS Products, while knowingly selling unauthorized, inferior counterfeit imitations of Plaintiff's CARE BEARS Products that illegally utilize the CARE BEARS Marks and/or copy or derive from the CARE BEARS Works ("Infringing Products").

29.     Screenshot evidence showing each Defendant on Schedule A selling or offering Infringing Products is attached as Exhibit 3. Exhibit 3 includes representative marketplace screenshots reflecting the accused listings, seller identifiers, platform information, and the visible use of Plaintiff's CARE BEARS Marks, CARE BEARS character names, and/or artwork substantially similar to or derived from the CARE BEARS Works.

30.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

31.     The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

32.     The Seller Aliases intentionally conceal their identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants often go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

33.     Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Amended Complaint, as well as other unknown fictitious names and addresses. Such Seller Alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

34.     In addition to operating under multiple fictitious names, online infringers like Defendants in this case systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under

16

new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

35.    A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2[3].

36.    Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal, LLC ("PayPal") accounts, strategically concealed behind layers of payment gateways, specifically designed to evade detection and continue their infringing operations despite Plaintiff's legitimate enforcement efforts.

37.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

38.    Defendants, without any authorization or license from Plaintiff, have knowingly, willfully, and deliberately used Plaintiff's CARE BEARS Marks and infringed Plaintiff's CARE BEARS Works in connection with the advertisement, display, distribution, offering for sale, and

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

sale of Infringing Products into the United States, including within this judicial district of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York. The accused listings reproduce, display, and exploit Plaintiff's protected marks, character names, and/or copyrighted artwork to market goods to consumers without authorization.

### Count I - Trademark Infringement and Counterfeiting
**(15 U.S.C. § 1114)**

39.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40.    This is a trademark infringement action against certain Defendants based on their unauthorized use in commerce of the federally registered CARE BEARS Marks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods identified on Schedule A and Exhibit 3. The CARE BEARS Marks are distinctive. Due to Plaintiff's substantial and continuous investment in quality control, brand management, advertising, and product development, consumers have come to expect, rely upon, and associate the CARE BEARS Marks exclusively with Plaintiff and authentic licensed CARE BEARS Products.

41.    Without Plaintiff's authorization or consent, and with knowledge of Plaintiff's well-known and prior rights in its CARE BEARS Marks, Defendants intentionally reproduced, copied, and/or colorably imitated the CARE BEARS Marks and used designations that are identical with, or substantially indistinguishable from, or confusingly similar to the CARE BEARS Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

42.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted in disregard of Plaintiff's exclusive rights in and to the CARE BEARS Marks.

43.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the CARE BEARS Marks to goods, packaging, point-of-purchase materials, product titles, product descriptions, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

44.     Defendants' unauthorized use of the CARE BEARS Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiff has developed in the CARE BEARS Marks through years of quality control and significant investment.

45.     Defendants' actions constitute willful counterfeiting of the CARE BEARS Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiff to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

46. Defendants' continued, knowing, and willful use of the CARE BEARS Marks without Plaintiff's consent or authorization constitutes intentional infringement of the CARE BEARS Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

47. Plaintiff has no adequate remedy at law, and if Defendants' actions are not immediately enjoined, Plaintiff will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the CARE BEARS Marks, for which there is no adequate remedy at law.

48. Plaintiff is likely to succeed on the merits of its trademark claims because the CARE BEARS Marks are strong and distinctive, Defendants' accused uses are identical or highly similar to those marks, the parties' goods are offered through overlapping online channels of trade to the same classes of consumers, and Defendants' use of the marks in product titles, images, and descriptions is likely to cause consumers to believe that Defendants' products are affiliated with, sponsored by, or approved by Plaintiff.

49. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, display, distribution, and sale of infringing and counterfeit CARE BEARS Products.

### Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

50. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51. Defendants' promotion, marketing, offering for sale, and sale of infringing CARE BEARS Products through marketplace listings that use Plaintiff's CARE BEARS Marks, character names, and/or associated artwork has created and is creating a likelihood of confusion, mistake,

and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiff.

52.    By using the CARE BEARS Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

53.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

54.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its CARE BEARS Products, and CARE BEARS Marks.

55.    Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

### Count III - Copyright Infringement
**(17 U.S.C. § 501(a))**

56.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.    Plaintiff's copyrighted CARE BEARS Works have significant value , embody original creative expression, and have been produced and created at considerable expense.

58.    Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the rights to reproduce, prepare derivative works based upon, distribute, and publicly display the copyrighted CARE

BEARS Works, including derivative works. The CARE BEARS Works are the subject of valid copyright registrations.

59.     Upon information and belief, Defendants had access to and knowledge of the copyrighted CARE BEARS Works through their widespread commercial availability in the marketplace, Plaintiff's extensive marketing and promotion, and the prominence of the CARE BEARS Characters in popular culture and online commerce. The accused products and listings shown in Exhibit 3 contain images and artwork that are substantially similar to protected elements of the CARE BEARS Works, including character depictions, poses, expressions, color schemes, and distinctive visual features, and Defendants created or caused to be created unauthorized copies of those works without Plaintiff's consent.

60.     Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrighted CARE BEARS Works by making or causing to be made unauthorized reproductions and derivative works based on the CARE BEARS Works, and by producing, displaying, marketing, distributing, and selling such reproductions and derivative works without Plaintiff's permission. On information and belief, such uses are commercial and non-transformative.

61.     Each Defendant, without the permission or consent of the Plaintiff, has and continues to reproduce, display, distribute, offer for sale, and sell infringing copies and derivative works of the CARE BEARS Works through online listings and products. Each Defendant has violated Plaintiff's exclusive rights of reproduction, preparation of derivative works, distribution, and public display. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101 *et seq*.) and do not constitute fair use

because, among other things, the challenged uses are commercial, non-transformative, and exploit the expressive core of Plaintiff's works to sell competing products.

62.     Further, as a direct and proximate result of their respective and collective acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted CARE BEARS Works. Plaintiff is entitled to recover Defendants' profits attributable to their infringement of the CARE BEARS Works pursuant to 17 U.S.C. § 504(b).

63.     The foregoing acts of infringement have been willful and intentional, as evidenced by Defendants' repeated use of Plaintiff's protected character imagery, marks, and related indicia in online product listings and goods offered for commercial sale without authorization.

64.     On information and belief, Defendants cannot establish fair use under 17 U.S.C. § 107. The purpose and character of Defendants' use is commercial because Defendants use Plaintiff's protected works to advertise and sell products for profit; the accused uses are not transformative because they trade on the recognizability and expressive appeal of the CARE BEARS Works rather than adding new meaning or message sufficient to alter their character; the CARE BEARS Works are highly creative; and Defendants have taken qualitatively and quantitatively significant protected expression. Defendants' conduct also harms the actual and potential market for authorized CARE BEARS Products and licensed derivative works

65.     As a result of each Defendant's infringement of Plaintiff's exclusive rights under applicable copyright statute, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504.

66.     The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C.

§§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights including without limitation the CARE BEARS Works, and ordering that each Defendant destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of the copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff pursuant to 17 U.S.C § 503.

## IV.    Prayer For Relief

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the CARE BEARS Marks and CARE BEARS Works or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized CARE BEARS Product or is not authorized by Plaintiff to be sold in connection with the CARE BEARS Marks and/or CARE BEARS Works;

   b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff and not approved by Plaintiff for sale under the CARE BEARS Marks and CARE BEARS Works;

   c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing CARE BEARS Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

24

d.  further infringing the CARE BEARS Marks and CARE BEARS Works and damaging Plaintiff's goodwill;

e.  otherwise competing unfairly with Plaintiff in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiff to be sold or offered for sale, and which bear the CARE BEARS Marks or which are derived from Plaintiff's CARE BEARS Works;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which bear the CARE BEARS Marks or which are derived from Plaintiff's CARE BEARS Works;

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiff, which bear the CARE BEARS Marks, or which are derived from the CARE BEARS

Works, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiff, which bear the CARE BEARS Marks, or which are derived from Plaintiff's copyrights in the CARE BEARS Works; and

c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5) In the alternative, that Plaintiff be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6) For Judgment in favor of Plaintiff against Defendants that they have:

a. willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and

b. otherwise injured Plaintiff's business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)    For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial;

8)    That Plaintiff be awarded its reasonable attorneys' fees and costs; and

9)    Award such other and further relief as this Court may deem just and proper under the circumstances and as allowed by law.


Dated: April 3, 2026                          Respectfully submitted,

                                              */s/ Shengmao Mu*
                                              Shengmao Mu
                                              NY No. 5707021
                                              **WHITEWOOD LAW PLLC**
                                              57 West 57th Street, 3rd and 4th Floors
                                              New York, NY 10019
                                              Telephone: (917) 858-8018
                                              Email: smu@whitewoodlaw.com

                                              *Counsel for Plaintiff*